IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| Pablo E. Rosado-Sanchez<br>Plaintiff,<br><br>v.<br><br>Pablo Crespo-Claudio, Director<br>AEELA<br><br>Defendants | **Civil. No. 22-cv-01461(GMM)** |

## <u>OPINION AND ORDER</u>

Pablo Enrique Rosado Sánchez ("Rosado" or "Plaintiff") brings this suit against the Asociación de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA"), Pablo Crespo-Claudio ("Mr. Crespo-Claudio"), in his official capacity as Executive Director of AEELA and Iritza Ortiz-Echevarría ("Ms. Ortiz-Echevarría"), in her official capacity as Collections Manager of AEELA (collectively, "Defendants"), under the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681. (Docket No. 1). Rosado alleges that AEELA failed to properly report certain payments regarding loans to the credit agencies, including Transunion, in violation of the FCRA's requirement to report his information fairly. (<u>Id.</u>). Because of this alleged inaccurate reporting, Rosado's credit

score dropped, and he claims that the lower score affected his ability to provide for his needs. (Id. at 3).

Defendants filed a *Motion for Summary Judgment*. They posit that Plaintiff's loans had to be administratively liquidated against Plaintiff's savings and dividends which secured the loans. (Docket No. 251). As such, they argue that AEELA's liquidation of the loans against Plaintiff's savings and dividends was performed in accordance with the Loan Promissory Note and in compliance with applicable law and regulations, under which the liquidation was not considered a payment.

Rosado opposed the *Motion for Summary Judgment* ("*Opposition to Motion for Summary Judgment*"). He claims that AEELA committed fraud regarding the Loan Promissory Note and that "[n]o institution can apply the client's entire savings amount to a loan if the client does not agree on that occasion." (Docket Nos. 252; 253; 254).

Defendants filed *Defendants Reply to Plaintiff's Opposition to Defendants Statement of Uncontested Facts* and *Defendants Reply to Plaintiff's Opposition to Defendants Motion for Summary Judgment and Response to DKT. No. 254*. (Docket Nos. 257; 258).

For the reasons explained below, Defendants' *Motion for Summary Judgment* is **GRANTED**.

Civil No. 22-01461(GMM)
Page -3-

## I.    PROCEDURAL BACKGROUND

On September 23, 2022, Rosado filed a Complaint against AEELA, Mr. Crespo-Claudio, in his official capacity as Executive Director of AEELA, and Ms. Ortiz-Echevarría, in her official capacity as Collections Manager of AEELA. He alleged violations to the FCRA, Fair Debt Collections Practices Act ("FDCPA"), civil rights, and discrimination on the basis of sex. (Docket No. 1). On that same date, Rosado filed a *Motion to Proceed in Forma Pauperis* which the Court granted on September 28, 2022. (Docket Nos. 2; 3).

After multiple filings by Rosado, on April 18, 2023, Defendants filed a *Motion to Dismiss Complaint* ("*Motion to Dismiss*") pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. They alleged that the Complaint failed to comply with pleading requirements, including stating a plausible claim for which relief can be granted. (Docket No. 79). On April 19, 2024, Rosado filed his *Opposition to the Motion to Dismiss* (Docket No. 80).

On May 3, 2023, the Court set a hearing on motion regarding the *Motion to Dismiss*. (Docket No. 89). This hearing was held on May 16, 2023. (Docket No. 97). The Court initiated proceedings by guiding the Parties as to the nature of the hearing, considering Rosado's *pro se* status. At the Court's request, the Parties explained the factual basis of the claim, including the timeline

of events, Rosado's monthly payments, and AEELA's allocation of said payments. (Id.). Upon considering the Parties' arguments, the Court ruled that the allegations in the Complaint were sufficient to state a claim upon which relief can be granted and could not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, the Court denied without prejudice the *Motion to Dismiss* as to the FCRA claims.

Defendants, however, requested the Court to dismiss Rosado's sex discrimination claim. The request was taken under advisement. (Id. at 2).

In addition, during the hearing, the Court found as follows: "[i]n the interest of justice, and for the upcoming procedural events such as discovery, dispositive motions and possible settlement negotiations, the Court deemed appropriate to appoint a pro-bono counsel for the Plaintiff pursuant to 18 USC § 1915(e)(1) and PR Local Civil Rule 83L." (Id.). As such, the Court appointed Pro-Bono Counsel Mariana D. Garcia-Garcia ("Counsel García-García") to represent the Plaintiff.

On May 18, 2023, the Court issued an Order granting in part and denying in part the *Motion to Dismiss*. (Docket No. 101). Specifically, the Court reiterated the denial without prejudice of the dismissal of the claims brought pursuant to the FCRA. As to the claims under the FDCPA, the *Motion to Dismiss* was granted,

since AEELA is not a debt collector under that statute. The FDCPA applies to people and organizations that collect debts on behalf of others. The statutory language and court interpretation consistently illustrate that it does not apply to creditors collecting their own debts. *See* 15 U.S.C. § 1692(a)(6); *see also* Heintz v. Jenkins, 514 U.S. 291, 293 (1995); Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010); Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 22 n. 4 (1st Cir. 2002). The sex discrimination claim was also dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). The Court found that the allegations in the Complaint, while taken as true and in the light most favorable to Plaintiff, failed to state a claim upon relief can be granted. (Id.).

Thereafter, Rosado filed a *Motion requesting to proceed pro se*. (Docket No. 103). Rosado disagreed with the Court's appointment of pro bono counsel, citing past issues with pro bono counsel and believing that the appointment would cause further delays to the resolution of his case. On May 23, 2023, the Court denied the *Motion requesting to Proceed Pro Se* and reiterated its ruling at Docket No. 97, that "[i]n the interest of justice, a pro-bono appointment for Plaintiff was deemed appropriate." (Docket No. 112).

After a series of motions filed by Plaintiff regarding his pro bono legal representation, the Court held those requests in abeyance and set a hearing for court appointed Counsel García-García to inform her position. (Docket No. 125). After various *pro se* filings, the Court instructed Plaintiff to file motions through his attorney. (Docket No. 138). Thereafter, Plaintiff insisted on proceeding *pro se* and continued to file *pro se* motions, despite being represented by Counsel García-García, in contravention of Court orders and federal rules of procedure. (Docket Nos. 146; 147; 148; 149; 150; 151; 152; 157; 158).

After various requests to continue the hearing, a status conference was held on July 10, 2023. The Plaintiff did not appear. (Docket No. 159). The Court reiterated its rationale and legal basis for appointing pro-bono counsel for Rosado under 18 U.S.C. § 1915(e)(1) and Local Civil Rule 83L. To that extent it ruled:

> In the interest of justice, after considering the complexity of Mr. Rosado's claims under the Fair Credit Report Act, and foreseeing upcoming procedural events which will likely include discovery (depositions, request for interrogatories, production of documents, etc.), preparation and filing of dispositive motions, conducting settlement negotiations, preparing and filing pre-trial memoranda, trial preparation, trial, and other procedural events), the Court reiterates the need for Mr. Rosado to be represented by counsel. Pro-bono counsel is deemed necessary to protect Mr. Rosado's rights and to ensure the fairness of the judicial process. *See* DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).

(Id. at 2). Since Rosado's presence was deemed indispensable, the Court set a new date to hold the hearing. (Id. at 3).

A further status conference was held on July 14, 2023. (Docket No. 163). The Court commenced the hearing by reviewing certain procedural events such as the May 16, 2023 and July 10, 2023 hearings to explain to Mr. Rosado the need for his appearance. (Id.). The Court reiterated that its decision to appoint pro bono counsel relied on 18 U.S.C. § 1915(e)(1) and PR Local Civil Rule 83L, foreseeing upcoming procedural events, such as discovery — with emphasis on depositions, answer to interrogatories and request for production of documents—, dispositive motions, possible settlement negotiations, among others, which inevitably, would become more complicated.

The Court explained to Rosado that in determining whether to appoint counsel, the Court examined the totality of circumstances considering the merits of the case and the nature of a FCRA claim, the complexity of the legal issues before the Court, Plaintiff's inability to represent himself and understand the legal proceedings, and the need to protect his rights and to ensure the fairness of the judicial process. (Id. at 3-5). After hearing the parties, the Court referred the case for settlement negotiations to Magistrate Judge Marshal D. Morgan ("Magistrate Judge Morgan") and determined that, if no settlement was reached, a case

management order would be issued to efficiently continue with the proceedings.

After various procedural events —including Plaintiff's filing of an Interlocutory Appeal of the order appointing pro bono counsel before the Court of Appeals for the First Circuit— Magistrate Judge Morgan held the settlement conference on October 31, 2023. Plaintiff did not appear. Counsel García-García explained to Magistrate Judge Morgan the difficulties she had been having communicating with her client because he was insisting on proceeding *pro se*. (Docket No. 211). On November 7, 2023, Counsel García-García filed *Motion to Withdraw as Plaintiff's Appointed Counsel*. (Docket No. 213). On November 8, 2023, the Court allowed the withdrawal of Counsel García-García. (Docket No. 214). Rosado thus continued *pro se*.

On December 7, 2023, Magistrate Judge Morgan held another settlement conference. (Docket No. 229). After discussing the matters related to the case, the Parties reached an agreement and Magistrate Judge Morgan ordered the filing of the corresponding dismissal documents. (Id.). Nonetheless, shortly after, Rosado expressed that he opposed the settlement agreement and made a series of filings. *See* (Docket Nos. 230; 231; 233; 235; 236; 237). On December 29, 2023, Magistrate Judge Morgan held a motion hearing. Since no agreement was reached, the matter was referred

for continuation of proceedings to the District Court. (Docket No. 243). The Court issued a Case Management Order on January 2, 2024. (Docket No. 244).

On March 27, 2024, the Defendants filed a *Motion for Summary Judgment* and a *Statement of Uncontested Facts* in support of the *Motion for Summary Judgment*. (Docket Nos. 250; 251). Defendants allege that the liquidation of Rosado's savings and dividends does not constitute a payment and was made in strict adherence to the Loan Promissory Note and in compliance with applicable law and regulations. (Docket No. 251). Further, Defendants contend that there are no material facts in dispute since the record shows that the liquidation was performed in accordance with the Loan Promissory Note and in line with AEELA's Act and regulations. Defendants also contend that AEELA complied with the FCRA when reporting Rosado's account.

On April 1, 2024, Rosado filed his *Opposition to Motion for Summary Judgment*. He claims that AEELA committed fraud regarding the Loan Promissory Note. Specifically, Rosado alleged that "AEELA included an elaborate decoy in the loan promissory note, a trap, which I signed, believing it was legitimate; knowing the customer believed in AEELA excellent reputation and was not going to read it in detail." (Docket No. 252 at 1). On a separate filing titled *Plaintiff's response in total disagreement with document 251*

Rosado added that "[n]o institution can apply the client's entire savings amount to a loan if the client does not agree on that occasion." (Docket No. 253). Furthermore, Rosado argues that "all recognized financial entities require the customer specifically, to request an amortization, (it is something that the client requests: [t]hey do not do it if the client does not agree [sic]) which is not included in the [P]romissory [N]ote; it is not part of the [P]romissory [N]ote, (thus) it was a fraud." (Docket No. 254 at 1).

On April 15, 2024, Defendants filed *Defendants Reply to Plaintiff's Opposition to Defendants Statement of Uncontested Facts* and *Defendants Reply to Plaintiff's Opposition to Defendants Motion for Summary Judgment and Response to DKT. No. 254*. (Docket Nos. 257; 258). Thereby, Defendants posit that their *Statement of Uncontested Facts* must be deemed admitted by the Court since Plaintiff did not controvert them. (Docket No. 257 at 5). In addition, Defendants responded to Plaintiff's fraud allegation, arguing that "[t]he fact that Plaintiff now alleges that he did not read the Promissory Note, does not make it fraudulent." (Docket No. 258 at 3).

Civil No. 22-01461(GMM)
Page -11-

## II.  LEGAL STANDARD

A.  *Pro Se* Litigants

Courts "are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold *pro se* pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of *pro se* claims due to technical defects." Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (*citing* Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Therefore, "courts must be mindful of the challenges faced by *pro se* litigants and construe their arguments liberally". Vieira v. De Souza, 22 F.4th 304, 311 (1st Cir. 2022) (*quoting* McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979)).

Nonetheless, "self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985) (*quoting* Faretta v. California, 422 U.S. 806, 835 n. 46 (1975)). "Thus, the Court will consider a *pro se* movant's circumstances when reviewing his motion for summary judgment but will not provide 'extra procedural swaddling.'" Grossman v. Martin, 566 F.Supp.3d 136, 143 (D.R.I. 2021) (*quoting* Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994)).

B.   Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. White v. Hewlett Packard Enterprise Co., 985 F.3d 61, 68 (1st Cir. 2021); Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996). "A genuine dispute is one that a reasonable factfinder could resolve in favor of either party." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015) (citing Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case.'" Taite v. Bridgewater State U., Bd. of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).

To prevail on summary judgment on a particular issue, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (citing Celotex Corp., 477 U.S. at 323). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." E.E.O.C. v. Kohl's Dept. Stores, Inc., 774 F.3d 127, 131 (1st Cir. 2014) (*quoting* Celotex Corp., 477 U.S. at 322) (internal quotations omitted). In opposing a motion for summary judgment, the non-moving party "bears the burden of producing specific facts sufficient to" defeat summary judgment. González-Cabán v. JR Seafood Inc., 48 F.4th 10, 14 (1st Cir. 2022) (*quoting* Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020)) (internal quotations omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (*citing* Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Furthermore, the Court must review the record as a whole and avoid assessing the credibility or gauging the weight of the evidence presented. *See* Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014).

The Court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (*quoting* Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)). "In addition, the 'absence of evidence on a critical issue weighs against the party—

be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial.'" Inés María Jelú Iravedra v. Municipality of Guaynabo, Civil No. 16-1585, 2018 U.S. Dist. LEXIS 59321, at *4-5 (D.P.R. Mar. 30, 2018) (quoting Alamo Rodríguez v. Pfizer Pharms., Inc., 286 F. Supp.2d 144, 151 (D.P.R. 2003)).

The goal of "summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 56 (1st Cir. 2021) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). In short, for either party to prevail on summary judgment, they "must demonstrate that, even admitting well-pleaded allegations in the light most favorable to [the non-moving party], the applicable law compels a judgment in its favor." Vega-Martínez v. Hosp. San Antonio Inc., Civil No. 18-1055, 2022 WL 4539850, at *3 (D.P.R. Sept. 28, 2022).

C.   Local Rule 56

Summary judgment motions must be compliant with Local Rule 56, which imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." L. Civ. R. 56(b). A party opposing a motion for summary judgment must then "admit, deny or qualify the facts supporting the motion for

summary judgment by reference to each numbered paragraph of the moving party's statement of facts." L. Civ. R. 56(c).

Moreover, Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . .The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 108 (1st Cir. 2006).

"The purpose of this 'anti-ferret rule' is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007) (quoting Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005)).

"Time and again, the First Circuit Court of Appeals has 'emphasized the importance of local rules similar to Local Rule 56 of the District of Puerto Rico.'" Matos Lugo v. Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico, Civil No. 20-1314,

2023 WL 8238896, at *2 (D.P.R. Nov. 27, 2023) (*quoting* <u>Cabán-Hernández</u>, 486 F.3d at 7). Parties ignore these rules "at their peril." <u>López-Hernández v. Terumo Puerto Rico LLC</u>, 64 F.4th 22, 26 (1st Cir. 2023) (*quoting* <u>Mariani-Colón</u>, 511 F.3d at 219).

    D.   <u>Rule 36(a)</u>

    Under Rule 36 of the Federal Rules of Civil Procedure "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3); *see also* <u>Foss v. Marvic Inc.</u>, 994 F.3d 57, 63 (1st Cir. 2021).

## III. UNCONTESTED FACTS

    The Court examined Defendants' *Statement of Uncontested Facts* (Docket No. 251) and Plaintiff's *Opposition to Motion for Summary Judgment* (Docket No. 252). Rosado's *Opposition to Motion for Summary Judgment* does not cite to the record to support his claims, nor does he respond individually to each of Defendants uncontested

facts as required by Local Civil Rule 56. Mindful of Rosado' status as a *pro se* litigant, the Court reviewed his *Opposition to Motion for Summary Judgment* to ascertain whether he intended to submit his own statement of material facts or otherwise took issue with any of the Defendants' material facts. Having found that Rosado nowhere disputes any of Defendants' material facts, in accordance with Local Rule 56 and applicable caselaw, the Court concludes that he has admitted all material facts for purposes of the *Motion for Summary Judgment*.

The failure of a party to respond to a statement of material facts does not necessarily mean that the Court is bound to accept each proffered fact. Instead, the moving party must itself comply with Local Rule 56 and supply record support for each of its proposed facts. To assure that Defendants' proposed facts are properly before the Court, the Court reviewed each of the proffered facts to determine whether each is adequately supported by record citation. Therefore, having performed its due diligence review of the summary judgment record, the Court makes the following findings of fact:

1. Rosado worked for the Puerto Rico Department of Education and was a public employee. As such, he was a compulsory member of AEELA by virtue of Act No. 9 of April 25, 2013, until day of his termination. (Docket Nos. 250 ¶ 1; 250-5 at 11 ¶ 1).

2.  On May 28, 2020, Rosado executed a Loan Promissory Note with AEELA. (Docket Nos. 135; 149; 160 at 1; 250 ¶ 2; 250-1 at 2; 250-5; 250-6).

3.  As evinced by the Loan Promissory Note, Rosado requested and obtained from AEELA loan GT-2858790 in the amount of $7,775.00 to be paid in monthly installments of $179.74 starting in August 2020 and obtained a non-amortizing emergency loan EM-2858790 in the amount of $1,035.00 (the "Loans"). (Docket Nos. 135; 149; 160 at 1; 250 ¶ 2; 250-1 at 2; 250-5; 250-6).

4.  On June 1, 2020, Rosado obtained the Loans. (Docket Nos. 135; 149; 160 at 1; 250 ¶ 2; 250-1 at 2).

5.  The Loans were guaranteed with Rosado's savings and dividends held with AEELA, against which AEELA granted the Loans to Rosado, as a member of the association. (Docket No. 250-1 at 2; 250-5; 250-6).

6.  The Loan Promissory Note establishes, among others, the following terms and conditions agreed by Rosado:

    Savings and dividends in my account with the Association, and those deposited into said account in the future, shall be withheld by the Association as guarantee or collateral for the loan that I hereby undertake, given that the refund of my net dividends and savings constitutes a vested and proprietary right, in accordance with the Association Act, which must first be used to pay off any debts and obligations undertaken with the Association. I do hereby grant authorization for these payments to be deducted from my salary, annuity or pension of the Retirement System that I belong to, whether it is the Teacher Retirement Board, the Judicature and the Retirement System Administration, the Electric Power Authority Retirement System, the University of Puerto Rico Retirement System, and the agencies that manage my annuity or my retirement funds with these, and

> in the event that my employment ceases without
> me being entitled to a pension, either
> immediate or deferred, I do hereby assign
> these to the Association, to the extent that
> they are necessary to amortize this debt.

(Docket Nos. 250 ¶ 3; 250-1 at 2) (emphasis added).

7.   The Loan Promissory Note also establishes:

> If for any reason the government entity for
> which I work, or the Retirement System, fails
> to make the deduction that I authorize
> hereunder, I do hereby agree to make the
> payment directly to the Association, during
> the time that the deduction is not made. I
> hereby further authorize the government entity
> where I work and the Secretary of the Treasury
> Department to deliver to the Association any
> check issued in my favor by the Commonwealth
> of Puerto Rico, for any purpose, in the event
> that I cease to work with the Government of
> Puerto Rico or when, for any other reason or
> cause, I fail to comply with the present
> obligation.

(Docket Nos. 250 ¶ 3; 250-1 at 2) (emphasis added).

8.   In addition, the Loan Promissory Note states:

> Furthermore, I hereby agree that if, for any
> reason or motive, any of the aforementioned
> instalments is not paid upon becoming due and
> payable; if for any other reason, I breach any
> of the provisions of this Note; or if I were
> to cease to work in the public service,
> whether it is due to my resignation,
> termination or for any other reason, the
> capital due, as well as the interest accrued
> thereon, shall automatically become due and
> payable, and the Association shall have the
> ability and power to proceed with the
> immediate collection thereof.

(Docket Nos. 250 ¶ 3; 250-1 at 2) (emphasis added).

Civil No. 22-01461(GMM)
Page -20-

9.  Furthermore, the Loan Promissory Note establishes:

> By signing this note, I also agree and
> acknowledge that in accordance with Act No. 9-
> 2013, Art. 45, any amount that, for any
> purpose, belongs or is to be delivered to me,
> my beneficiaries or legal heirs, as
> applicable, including Surrender Values, if
> insured and where appropriate, shall be
> applied to the payment, either in part or in
> whole, of any debt that I may have with the
> Association pursuant to a loan, guarantee or
> other obligation.

(Docket Nos. 250 ¶ 3; 250-1 at 2).

10. The Loan Promissory Note also establishes that
    "[o]nce the debt becomes past due and payable, it
    shall no longer be payable in instalments and shall
    become an unconditional debt immediately due and
    payable in full." (Docket Nos. 250 ¶ 3; 250-1 at
    2).

11. From April 2021 onwards, Rosado either did not make
    payments or made partial payments towards the
    Loans. (Docket Nos. 250 ¶ 4; 250-2 at 2 ¶ 7).

12. From January to April 2022, Rosado failed to make
    the payments towards the Loans. (Docket Nos. 250 ¶
    4; 250-2 at 2 ¶ 8).

13. On April 2022, AEELA was notified by the Puerto
    Rico Department of Education that Rosado was
    terminated from his employment in January 2022.
    (Docket Nos. 250 ¶ 5; 250-2 at 2 ¶ 9).

14. Due to Rosado's separation from his employment and
    lack of payment, the Loans were automatically
    declared due and payable by AEELA, and on April 26,
    2022, the Loans were administratively liquidated
    against Rosado's savings and dividends that secured
    the Loans (the "Liquidation"). (Docket Nos. 250 ¶
    6; 250-2 at 2 ¶ 10).

15. On April 26, 2022, as per AEELA's "Payoff Statement
    Administrative Liquidation", Rosado had the amount

of $5,546.50 in the savings and dividends, thereby reducing the balance of the Loans to $2,505.99. (Docket Nos. 250 ¶ 6; 250-2 at 2 ¶ 10; 250-3 at 2).

16. On May 2, 2022, AEELA addressed a letter to Rosado alerting him of the "Notice of Debt Balance" and the consequences of not making a timely payment. In pertinent part, the letter reads as follows:

> After liquidating your savings account, we sent you the Notice of Debt Balance in which we asked you to pay off the outstanding principal balance. As of today, we have not received the payment, and your debt amounts to $2,564.47*, including principal and the corresponding interest accrued thereon. We can report adverse information about your loan to credit reporting agencies. Late payments, missed payments, and other forms of default on your loan, may be reflected in your credit report.

(Docket Nos. 250 ¶ 7; 250-4 at 4) (emphasis added).

17. On May 5, 2022, upon Rosado's request, AEELA granted a payment plan of the remaining balance of the Loans after the Liquidation, and it was agreed and set at monthly payment of $94.43. (Docket Nos. 250 ¶ 7; 250-2 at 3 ¶ 11; 250-3 at 2).

18. On July 7, 2022, upon Rosado's request, a second payment plan of the balance of the Loans was agreed to and set at monthly payment of $47.64. (Docket Nos. 250 ¶ 7; 250-2 at 3 ¶ 12).

19. On July 8, 2022, AEELA addressed a letter to Rosado confirming the payment plan and reminding him of the need for timely payments regarding his credit. In pertinent part the letter reads as follows:

> Pursuant to your request to pay your pending debt with the Commonwealth of Puerto Rico Employee Association, you are hereby granted a payment plan for the collection thereof, in accordance with the provisions of the current Collections Regulations.

Civil No. 22-01461(GMM)
Page -22-

> . . .
>
> We would like to remind you that sending your
> payments in on time is your best credit
> reference and it allows you to avoid
> additional interest charges.

(Docket Nos. 250 ¶ 8; 250-4 at 4).

20. In the Complaint Plaintiff alleges that the savings
    held in his account with AEELA, which he admits
    guaranteed the Loans, were supposed to be
    considered as a payment to the Loans and reported
    to Trans Union as such. (Docket Nos. 1 at 1-3 ¶¶
    1,4,12,13,17; 250 ¶ 12).

21. On January 29, 2024, Defendants served upon
    Plaintiff, *Defendants' First Set of
    Interrogatories, Request for Admissions, and
    Request for Production of Documents*. (Docket Nos.
    250 ¶ 18; 250-5).

22. On February 22, 2024, Plaintiff served *Plaintiffs
    Response to Defendant's First Set of
    Interrogatories, Request for Admissions, and
    Request for Production of Documents* ("Plaintiff's
    Response to Interrogatories"). (Docket Nos. 250 ¶
    19; 250-6).

23. In the Plaintiff's Response to Interrogatories and
    Request for Admissions, Rosado reiterated his
    Complaint's allegations that the savings he had in
    his AEELA account should have been divided into a
    total of 26.2 payments to be credited to the Loans
    and that his savings were more than enough to cover
    his regular monthly payment of $179.74. (Docket
    Nos. 250 ¶¶ 13, 20; 250-6 at 2-3).

24. In addition, in Plaintiff's Response to
    Interrogatories and Request for Admission, Rosado
    admitted —by failing to respond pursuant to Federal
    Civil Rule 36— that Claro de Puerto Rico has made
    negative notifications to his credit report,
    thereby affecting it. (Docket Nos. 250 ¶ 21(d);
    250-5; 250-6).

25. In Plaintiff's Response to Interrogatories and Request for Admission, Rosado also admitted —by failing to respond pursuant to Federal Civil Rule 36— that his credit report reflects that he has several open accounts that also make negative notifications to his credit report. (Docket Nos. 250 ¶ 21(e); 250-5; 250-6).

26. AEELA reported Rosado's account to the Credit Reporting Agencies ("CRA's"). (Docket No. 250-2 at 3).

## IV.  APPLICABLE LAW AND ANALYSIS

The FCRA "seeks to promote 'fair and accurate credit reporting'" through regulating "the consumer reporting agencies that compile and disseminate personal information about consumers." TransUnion LLC v. Ramirez, 594 U.S. 413, 418 (2021) (*quoting* 15 U.S.C. § 1681(a)). This statute details obligations for CRAs such as Experian and TransUnion, as well as "furnishers" of information to the CRAs, such as AEELA in the case at hand. Under 15 U.S.C. § 1681s-2, furnishers have two primary obligations. First, furnishers may not provide inaccurate information to the CRAs. *See* 15 U.S.C § 1681-2(a)(1). Second, furnishers have specific duties in the event of a dispute over furnished information, including, conducting an investigation and promptly reporting any inaccurate or incomplete information to the CRAs, upon notice of a dispute by a consumer. *See* 15 U.S.C. § 1681s-2(b).

Congress has explicitly prohibited private suits over the first obligation. Chiang, 595 F.3d at 35; *see also* 15 U.S.C. § 1681s-2(c)(1). Therefore, in order to bring a private suit against a furnisher under the FCRA, a plaintiff must show that the furnisher did not adhere to its duties upon being properly made aware of a dispute over the information reported. To bring an FCRA claim against a furnisher, a consumer must first notify the CRAs of an alleged inaccuracy in the furnisher's report. *See* Barrepski v. Capital One Bank, 439 F. App'x 11, 12 (1st Cir. 2011). Next, the CRA will inform the furnisher, at which point the furnisher will be obligated to begin an investigation. *See* id. The furnisher's obligation to investigate and correct their error "begins ONLY upon the furnisher's receipt of notice FROM THE CRA; notice directly from the consumer is not enough." Id. (emphasis in the original). Therefore, procedurally, to prevail on his FCRA claim, Rosado must show that he followed the proper complaint channels under § 1681s-2(b) and that AEELA has failed to carry out its statutory obligations under the FCRA. Substantively, Rosado must demonstrate that the disputed information was incomplete or inaccurate, and that Defendants' investigation of the information was unreasonable. *See* Chiang, 595 F.3d at 38. "[A]bsent a showing of actual inaccuracy" the FCRA claim fails as a matter of law."

Civil No. 22-01461(GMM)
Page -25-

Id. at 37-38 (*citing* DeAndrade v. Trans Union LLC, 523 F.3d 61, 66
(1st Cir. 2008)).

    Here, Defendants have filed a *Motion for Summary Judgment*
accompanied by 21 uncontested facts and six exhibits. (Docket No.
250). Plaintiff's *Opposition to the Motion to Dismiss* and related
filings do not reject, deny, qualify, or even address any of those
facts. (Docket Nos. 252; 253; 254). While Rosado somewhat addressed
the facts, that is, he disagrees with the terms and conditions of
Loan Promissory Note and AEELA's management and application of his
savings towards his existing debt, the fact remains that, in
opposition, he generally claims that AEELA failed to accurately
report his payments in violation of the FCRA and committed fraud.
In sum, Rosado does not specifically refer to any of AEELA's
uncontested facts. Rosado also fails to cite to any material in
the record to support his claim that AEELA failed in its duty to
report his payments fairly and accurately to the credit bureaus.

    Local Rule 56's citation requirement has a purpose, and it is
to "require the parties to focus the district court's attention on
what is, and what is not, genuinely controverted. . .Otherwise,
the parties would improperly shift the burden of organizing the
evidence presented in a given case to the district court." Mariani-
Colon, 511 F.3d at 219. Throughout this case's nearly two-year
lifespan, Rosado has submitted hundreds of motions. Many of these

motions contained multiple attachments, including website
screenshots, handwritten notes by Rosado, and e-mail
communications, to name a few. Attempting to find evidence to
adequately support Rosado's claim of improper reporting would
force this Court, as the First Circuit has stated, to "grope
unaided for factual needles in a documentary haystack." Caban
Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir.
2007).

Moreover, throughout this case's lifespan, Rosado has had
numerous difficulties comporting with both the Federal Rules of
Civil Procedure and the Local Rules of the District of Puerto Rico.
The Court warned Rosado several times that if he did not adhere to
the Court's rules, he could be subject to sanctions up to and
including dismissal of his case. See e.g. (Docket No. 244). The
Court even provided Rosado with pro bono counsel. Yet, Rosado
rejected counsel and elected to continue litigating pro se, despite
the Court being explicit as to the challenges and difficulties in
navigating the complexities of federal litigation, in this case,
an FCRA claim. Despite this Court's understanding of the obstacles
that pro se litigants face and being mindful that Rosado's position
as a pro se litigant does grant him some leniency in his
submissions, the caselaw is clear. The fact that Rosado is self-
represented "is not 'a license not to comply with relevant rules

of procedural and substantive law.'" <u>Bechtel Power Corp.</u>, 780 F.2d at 140.

Therefore, pursuant to Local Rule 56(e), the factual claims that Rosado alleges in his *Opposition to Motion for Summary Judgment* and additional motions (Docket Nos. 252; 253; 254) need to be disregarded for lack of specific citation to the record. Defendant's factual claims of proper reporting to the CRAs, as they are supported record citation and uncontroverted by Rosado's opposition, are required to be admitted pursuant to Local Rule 56(e).

Hence, this Court deems admitted that Rosado executed a Loan Promissory Note with AEELA on May 28, 2020. According to the Loan Promissory Note, Rosado —as then public employee and member of AEELA— agreed that the savings and dividends in his account with AEELA, and those deposited into said account in the future, could be withheld by AEELA as guarantee or collateral for the loan that he undertook. AEELA could proceed with such deduction, pursuant to the text of the Loan Promissory Note, which explains: "given that the refund of my net dividends and savings constitutes a vested and proprietary right, in accordance with the Association Act, which must first be used to pay off any debts and obligations undertaken with the Association." (Docket No. 250-1 at 2). The text of the Loan Promissory Note also establishes that Rosado

agreed to make payments regarding the loan directly to AEELA if payments ceased to be deducted from his salary. Specifically, Rosado agreed:

> that if, for any reason or motive, any of the aforementioned instalments is not paid upon becoming due and payable; if for any other reason, I breach any of the provisions of this Note; **or if I were to cease to work in the public service, whether it is due to my resignation, <u>termination</u> or for any other reason, the capital due, as well as the interest accrued thereon, <u>shall automatically become due and payable</u>, and the Association shall have the ability and power to proceed with the immediate collection thereof.**

(Docket No. 250-1 at 2) (emphasis added). Furthermore, the Loan Promissory Note establishes that "[o]nce the becomes past due and payable, it shall no longer be payable in instalments and shall become an unconditional debt immediately due and payable in full." <u>Id.</u>

The Court also deems admitted that Rosado failed to make a series of payments of his loans with AEELA, first, from April 2021 onwards, and then from January to April 2022. (Docket Nos. 250 ¶ 4; 250-2 at 2 ¶ 7). The record equally shows that upon such default, Defendants reported Rosado's account to the CRA's. (Docket No. 250-2 at 3). It is also deemed admitted that prior to this, Rosado was terminated from employment at the Puerto Rico Department of Education and that once notified on April 2022, due to Rosado's

separation from his employment and lack of payment, the Loans were automatically declared due and payable by AEELA.

Consequently, on April 26, 2022, the Loans were administratively liquidated against Rosado's savings and dividends that secured the Loans. (Docket Nos. 250 ¶ 6; 250-2 at 2 ¶ 10). After liquidating his AEELA savings account, on May 2, 2022, AEELA issued a "Notice of Debt Balance" for $2,564.47 and warned Rosado that they could report adverse information about his Loans due to late payments or default. (Docket Nos. 250 ¶ 7; 250-4 at 4). Additionally, the record shows AEELA granted Rosado two payment plans to assist him with paying off his debt. (Docket Nos. 250 ¶ 7; 250-2 at 3 ¶ 11; 250-3 at 2 and 3 ¶ 12). Therefore, contrary Rosado's allegations, he defaulted on his Loan payments and his savings could not be considered payments towards the outstanding balance he owed AEELA. Hence, on this record, it is forceful to conclude that Defendants properly reported his account the CRA's in compliance with the FCRA.

Furthermore, the record does not reflect that Rosado undertook the necessary actions to bring a claim against a furnisher of credit information under the FCRA. While Rosado issued a written communication to the CRAs, he did not proffer any evidence that the CRAs have notified AEELA of the dispute, the result of their investigation, nor that AEELA has failed to carry

```
Civil No. 22-01461(GMM)
Page -30-
```

out its statutory obligations under the FCRA. Rosado's Complaint and *Opposition to Motion for Summary Judgment* focus exclusively on the contention that AEELA is violating the FCRA by reporting inaccurate information to the CRAs because they did not report his savings as payments. However, this alleged inaccurate reporting is not enough to grant Rosado a private right of action, and his Complaint and subsequent motions do nothing to show an actionable claim against AEELA. Even assuming, *arguendo*, that the record supports an allegation that AEELA was notified by the CRAs of Rosado's complaints, Rosado has not met his burden of demonstrating a genuine issue of fact that AEELA's investigation was inadequate.

Considering Rosado's admissions and the evidence on record, he has no grounds to bring a private suit against AEELA for FCRA violations. Put simply, there is no genuine issue as to whether the AEELA debt reported by the CRAs was inaccurate. Rosado presents no evidence or reason to move this Court to conclude that AEELA acted improperly in its reporting of his payments to the CRAs. Since Rosado failed to both establish a cause of action and to controvert Defendants' evidence showing proper reporting, summary judgment is warranted in this case.

### V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Complaint is thereby dismissed with prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 8, 2024.


s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE